

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00754-CR

Jose Angel **FLORES** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court No. CCL-10-0869
Honorable Frank Follis, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:      Catherine Stone, Chief Justice
              Karen Angelini, Justice
              Rebeca C. Martinez, Justice

Delivered and Filed:  December 17, 2014

REVERSED AND REMANDED

Jose Angel Flores Jr. appeals the trial court's denial of his motion to suppress blood evidence, arguing his motion should have been granted pursuant to the Supreme Court's recent decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). Because we agree that Flores's motion to suppress should have been granted, we reverse the judgment of the trial court and remand the cause for a new trial.

**BACKGROUND**

On November 3, 2009, at about 8:00 p.m., Flores was stopped for a traffic violation by Deputy Robert Williams and asked to provide a breath specimen. Flores refused. He was then arrested and placed inside Deputy Williams's patrol vehicle. While en route to the jail, Deputy Williams called dispatch and asked that a background check be run on Flores. Deputy Williams was informed by dispatch that Flores had two prior convictions for DWI. Deputy Williams then took Flores to the medical center so that a blood sample could be taken from Flores pursuant to section 724.012(b)(3)(B) of the Texas Transportation Code. Deputy Williams did not obtain a warrant for the blood draw. It was later determined that Flores did not, in fact, have two prior convictions for DWI.

This is the second time we have heard an appeal from a decision in the underlying cause. In the first appeal, *State v. Flores*, 392 S.W.3d 229 (Tex. App.—San Antonio 2012, pet. ref'd), the State appealed the trial court's interlocutory order granting Flores's first motion to suppress, which had been based on a statutory violation of section 724.012(b)(3)(B). We reversed the trial court's order, holding that Flores had not met his burden of making a *prima facie* showing of a statutory violation under section 724.012(b)(3)(B). On remand, Flores filed a second motion to suppress based on the Supreme Court's recent decision in *McNeely*, arguing that the mandatory blood draw violated his rights under the Fourth Amendment.

On July 17, 2013, at the hearing on Flores's second motion to suppress, the trial court took judicial notice of the testimony that was provided in the first suppression hearing. Deputy Williams then provided additional testimony. Deputy Williams testified that the normal business hours for the Guadalupe County offices were 8:00 a.m. to 5:00 p.m. and that judges are not readily available after hours. According to Deputy Williams, there must be "special circumstances" before an officer can attempt to locate a judge outside of normal business hours, and "to do that, [the officer] ha[s]

to go up [his] chain of command." Deputy Williams testified that at that time, he would need to contact and notify his supervisor, Sergeant Strauss, that he needed a warrant. Deputy Williams testified that he did not attempt to obtain a warrant to authorize the blood draw on Flores. Deputy Williams explained that he did not believe he needed a warrant under section 724.012(b)(3)(B). On cross-examination, Deputy Williams confirmed that his department did, in fact, have procedures for obtaining a warrant after normal business hours. After hearing all the evidence presented, the trial court denied Flores's second motion to suppress. Flores then pled guilty and now appeals the denial of his pre-trial motion to suppress.

### DISCUSSION

Flores argues that the warrantless blood draw performed on him violated his rights under the Fourth Amendment to the Constitution. For support, Flores relies on the Supreme Court's decision in *McNeely* and this court's decision in *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted).[1] In *Weems*, 434 S.W.3d at 665, we analyzed *McNeely* and concluded that section 724.12(b)(3)(B) does not constitute a valid exception to the Fourth Amendment's warrant requirement. The State recognizes the applicability of our holding in *Weems*, but argues that we should reconsider our holding in *Weems*. We need not do so, however, as the Texas Court of Criminal Appeals recently held in *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *20 (Tex. Crim. App. Nov. 26, 2014), that "the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement." The court of criminal appeals explained that "the Supreme Court's holding in *McNeely* makes clear that drawing the blood of an individual suspected of DWI falls under the category of cases holding that 'a warrantless search of a person is reasonable only

---

[1] When the trial court held its hearing on Flores's second suppression motion, it did not have the benefit of this court's decision in *Weems*.

if it falls within a *recognized* exception' to the warrant requirement." *Villarreal*, 2014 WL 6734178, at \*20 (quoting *McNeely*, 133 S. Ct. at 1558) (emphasis added). The court of criminal appeals emphasized that the *McNeely* Court "explained that such an intrusion implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Villarreal*, 2014 WL 6734178, at \*20 (quoting *McNeely*, 133 S. Ct. at 1558). According to the court of criminal appeals, "[t]hese principles from *McNeely*—the recognition of the substantial privacy interests at stake and the applicability of the traditional Fourth Amendment framework that requires either a warrant or an applicable exception—apply with equal force to this case." *Villarreal*, 2014 WL 6734178, at \*20. Thus, the court of criminal appeals "reject[ed] the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions [of the Transportation Code] can fall under one of the established exceptions to the warrant requirement." *Id.* The court of criminal appeals further "reject[ed] the State's suggestion that such a search may be upheld under a general Fourth Amendment balancing test." *Id.*

Alternatively, the State argues that a recognized exception to the Fourth Amendment's warrant requirement applies in this case—exigent circumstances. The State points to the testimony of Deputy Williams that the traffic stop occurred after normal business hours and that before requesting a warrant, Deputy Williams would have to go up his chain of command, which began with Sergeant Strauss. We disagree with the State that this record supports exigent circumstances. Exigent circumstances "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S. Ct. at 1558. The State had the burden below to prove the warrantless search was reasonable pursuant to the exigent circumstances exception under the totality of the circumstances. *See Amador v. State*, 275 S.W.3d 872 (Tex. Crim. App. 2009); *Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007).

The only evidence presented at the hearing was from Deputy Williams, who confirmed that his department did, in fact, have procedures for obtaining a warrant after normal business hours. His knowledge on these procedures was limited. Deputy Williams knew that he had to contact his supervisor, but did not know what occurred after he did so. Deputy Williams testified he made no attempt to secure such a warrant by following these procedures. Thus, this record is limited in its testimony regarding "procedures in place for obtaining a warrant or the availability of a magistrate judge." *McNeely*, 133 S. Ct. at 1568. It also does not reflect "the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence." *Id.* We therefore conclude that this record does not show that under the totality of the circumstances, the warrantless blood draw was justified by the exigent circumstances exception to the Fourth Amendment's warrant requirement. *See Weems*, 434 S.W.3d at 666.

As the State did not show that the warrantless blood draw was reasonable under the Fourth Amendment, Flores's second motion to suppress should have been granted. After the trial court denied Flores's second motion to suppress, he decided to plead guilty. We cannot determine beyond a reasonable doubt that the trial court's failure to grant his motion to suppress did not contribute in some measure to the State's leverage in obtaining Flores's guilty plea and thus to Flores's conviction. *See* TEX. R. APP. P. 44.2(a); *Kennedy v. State*, 338 S.W.3d 84, 102-03 (Tex. App.—Austin 2011, no pet.).

Finally, the State argues that even if we hold that Flores's rights under the Fourth Amendment were violated by the warrantless, nonconsensual blood draw, the Texas exclusionary rule as enunciated in article 38.23(a) should not apply. According to the State, the blood draw was not taken "in violation" of law. *See* TEX. CODE OF CRIM. PROC. ANN. art. 38.23(a) (West 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of

America, shall be admitted in evidence against the accused on the trial of any criminal case."). The State argues that "it is indisputable that the state of the law on November 3, 2009, was that warrantless blood draws made pursuant to section 724.012(b)(3)(B) were permissible and was not seized in violation of the law as it was understood on that day." We disagree with the State. Section 724.012(b)(3)(B) does not explicitly authorize a warrantless search. *Weems*, 434 S.W.3d at 666; *see also McNeil v. State*, 443 S.W.3d 295, 303 (Tex. App.—San Antonio 2014, pet. filed). It "does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws." *Weems*, 434 S.W.3d at 666 (citation omitted). In responding "to the contention that the Legislature has clearly indicated its desire to create a new exception to the warrant requirement," the Texas Court of Criminal Appeals observed in *Villarreal*, 2014 WL 6734178, at *19, that the statutory language contained within the provisions in the Texas Transportation Code "is silent as to whether a law-enforcement officer conducting a mandatory, nonconsensual search of a DWI suspect's blood is required to first seek a warrant." Further, warrantless seizures have always been impermissible under the Fourth Amendment unless founded on a recognized exception. *See United States v. Robinson*, 414 U.S. 518, 224 (1973). In *Villarreal*, 2014 WL 6734178, at *19, the court of criminal appeals emphasized that the Texas Legislature "may not restrict guaranteed rights set out in constitutional provisions." According to the court of criminal appeals, "[t]o the extent the mandatory-blood-draw statute may be interpreted as authorizing a warrantless search that would violate a defendant's rights under the Fourth Amendment, it cannot do so." *Id.*

The State also argues the Texas exclusionary rule and federal exclusionary rule should not apply because the officer relied on section 724.012(b)(3)(B) in good faith. We rejected this argument in *Weems* and in subsequent cases. *See Weems*, 434 S.W.3d at 666-67; *see also McNeil*, 443 S.W.3d at 303; *Fitzgerald v. State*, No. 04-13-00662-CR, 2014 WL 3747270, at *2 (Tex. App.—San Antonio July 30, 2014, pet. filed).

**CONCLUSION**

Because the warrantless blood draw violated Flores's rights under the Fourth Amendment, his second motion to suppress should have been granted. We thus reverse the judgment of the trial court and remand for a new trial.

Karen Angelini, Justice

Do not publish